STATE of Missouri, Respondent,

v.

Jackie Lee HARTWELL, Appellant.

No. 45117.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

William Kelleher, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Paul McGhee, Asst. Atty. Gen., for respondent.

EAGER, Presiding Judge.

■ Defendant and one John Sanders were charged with first degree robbery by information filed in the City of St. Louis. A severance was granted defendant and, upon trial, he was convicted and sentenced to five years in the penitentiary. His counsel filed a motion for new trial in due time, but has filed no brief. We proceed, therefore, to consider such of the assignments of the motion for new trial as are sufficient under 42 V.A.M.S.Supreme Court Rules, rule 27.20, as well as the formal parts of the record. State v. Ready, Mo., 251 S.W.2d 680.

On behalf of the state one Robert Hennings, 23 years of age and a resident of the City of St. Louis, testified: that he owned a 1951 Cadillac car, and that on Sunday morning, October 17, 1954, he drove in it alone to the 4600 block on Easton Avenue at some time around noon, parked the car, and went into "Maury's" automobile accessory store to buy a "continental kit" for the car; this store was located in that block and on the same side of the street; that at that time he had in his right trousers pocket $122 in bills and some change, all belonging to him; he was in the store a few minutes, but did not buy the kit; when he came out and approached his car he saw a man sitting on the right side of the front seat; the man "beckoned" him to come around and get in the car, and said he had something he wanted to show Hennings; the latter did get in the driver's seat, and this man immediately told him that he was from Amarillo, Texas, and was trying to get home, and at the same time showed him a .32 caliber revolver, took out the loaded shells, and asked Hennings if he wanted to buy it; he, Hennings, had never seen the gun before, and at the time he only saw one person in the car; the man was shabbily dressed in a wrinkled suit and hat and a khaki shirt, and Hennings hesitated, took and handled the gun, and talked to the man a little;

he then handed the gun back, told the man that he was not interested in it, and asked him to get out of the car; at that moment Hennings heard a voice from the back of the car and felt something in the back of his neck; this thing he felt was metal, and the man in the back said, "don't turn around"; Hennings had started to turn, but stopped; the voice then told the man in the front seat to "go into my pocket and see if I had any money"; the man in front, who was positively identified by Hennings as the defendant, reached into Hennings' pocket and took his money, including the $122 in bills and some change; the man in back then told Hennings to drive across the street, which he did, and both men jumped out, ran west and were picked up in a "bluish" Mercury, which drove up to them and turned at the corner; Hennings drove around the block trying to find the car and get the license number, but was unsuccessful; he then went directly to the Deer Street Police Station and reported the matter.

Defendant, Sanders and one Rigsby were arrested by the St. Louis police on the next Saturday while driving in a blue Mercury; in the trunk of the car was found some clothing, including a wrinkled blue pin-striped suit and hat, both of which were positively identified as those worn by defendant at the time of the robbery; in fact, defendant admitted they were his. At Rigsby's home the police found a .32 caliber revolver which was also identified by Hennings as the one which defendant tried to sell to him. Hennings first identified defendant at the police station on the day after his arrest; he also identified another of the three as the man who had been in the back of the car, Hennings having seen him in the rear vision mirror.

Defendant testified: that he and his two companions went out to the neighborhood in question on that morning to "gamble"; that he approached Hennings when the latter came out of the store, said that he had gotten in from Mississippi and asked for directions to a non-existent hotel and talked about meeting a girl; he then gave a signal to Sanders who came up and participated in the conversation; that all three then got in Hennings' car and drove around a little, Sanders supposedly tried to call some girls, and they came back to the original location; that Sanders suggested gambling and that they proceeded to play some kind of a three-card game, while sitting in the car; that Hennings, after winning $4, produced the pistol in question from under the car seat and lost it, along with $8 in money, on the final bet; that he and Sanders then left the car and Rigsby picked them up, complaining because they had won a pistol which might cause them trouble "in St. Louis." Defendant testified, also, that he lived in San Antonio, Texas, had been in St. Louis about seven days, had not worked there, and said, "We wasn't intending to stay too long." He denied taking any money away from Hennings, and testified that he merely won a net of $4 and the revolver from him by gambling. Rigsby corroborated the defendant as to the circumstances generally, he apparently having remained in the Mercury car.

There are seven assignments of error in defendant's motion for new trial, which we shall consider in order. The first is that the court erred in allowing the name of Morris Goldberg to be endorsed on the information during the trial, thus depriving defendant of the "right of deposition or investigation." This was done on application of the assistant circuit attorney after the jury was empaneled but before the opening statement of the state was made; counsel then stated that the witness' testimony would merely be corroborative of that of Hennings. In fact, Goldberg merely testified that Hennings was in his store, priced the kit, but did not buy it and left, and that a few minutes later he saw him across the street talking to a couple of colored men "by his car"; he did not even identify the two men. We fail to see how the use of

this testimony could have been prejudicially erroneous. In some respects it was corroborative of defendant. Under Section 545.070 RSMo 1949, V.A.M.S., the trial court has a very considerable discretion in permitting the endorsement of the names of additional witnesses upon the indictment or information; State v. Hands, Mo., 260 S.W.2d 14, 20; State v. Farris, Mo., 243 S.W.2d 983, 986–987. Here no affidavit of surprise or application for continuance was filed and certainly in the absence of substantial prejudice the court would not be justified in a finding of error. State v. Lindsey, Mo., 80 S.W.2d 123; State v. Baker, 318 Mo. 542, 300 S.W. 699; State v. Cain, Mo., 37 S.W.2d 416.

 Next, defendant complains that the assistant circuit attorney was permitted, over objection, to cross-examine defendant "on matters * * * outside of the examination in chief." No pages of the transcript are pointed out, but since there was only one such objection which was overruled, we consider the assignment. The question was: "When was the last time you worked," and the eventual answer was: just before he "left home," about a month and a half before the occurrences in question. Previously defendant had testified on cross-examination, and in response to questions to which there were no objections, that "we had been" in St. Louis about seven days, that "we hadn't found no job yet, but we was going to get one," and that he had about $49 when arrested. Such prior testimony may not, of course, extend the scope of the direct examination, but it may show that there was no prejudice inherent in the ruling complained of. The cross-examination of a defendant need not be confined to a categorical review of the matters stated in direct examination, but may cover any matter within the fair purview of the direct examination. State v. Lemon, Mo., 263 S.W. 186; State v. Wilson, 321 Mo. 564, 12 S.W.2d 445; State v. Revard, 341 Mo. 170, 106 S.W.2d 906; State

v. Glazebrook, Mo., 242 S.W. 928; State v. Ferguson, Mo., 183 S.W. 336. Mere incidental inquiries are not generally prejudicial; State v. Abbott, Mo., 245 S.W.2d 876. And inquiries made to test the accuracy of defendant's testimony or memory are permissible. Id. We see no error in this ruling and certainly no prejudice from it.

 After the witness Rigsby had completed his testimony for defendant, the assistant prosecutor stated that he would like to have the witness remain in court until "the matter" was concluded; defense counsel moved for a mistrial on the ground that this request, made "in a loud, demanding voice," implied that the witness had become subject to prosecution, and that it was so made to prejudice the jury. In the ensuing discussion counsel for the state explained that the request was made only for the purpose of having a subsequent witness identify Rigsby as the man who had made a certain offer of money. The motion was overruled and the prosecution did offer testimony in rebuttal (from Hennings and one Wilson) that Rigsby had approached Hennings at the entrance to a parking station and offered to pay him money to drop the charges. From this evidence it appears that the request was made for a legitimate purpose; only the trial court could observe the manner in which it was made and its effect, if any, on the jury. We certainly cannot say that the trial court abused its discretion in overruling the motion for a mistrial. State v. Wilkins, Mo., 100 S.W.2d 889, 896–897; State v. Riggs, Mo., 237 S.W.2d 196. Counsel made no request or motion except for a mistrial. This assignment is overruled.

 The next two assignments will be considered together. It is contended that defendant's oral motions for acquittal should have been sustained because the state did not "make a case of robbery in the first degree," and specifically because

proper venue was not shown. It requires no restatement of the facts to demonstrate that on Hennings' testimony a case of first degree robbery under Section 560.120 RSMo 1949, V.A.M.S., was made; that is to say, that his testimony constituted substantial evidence of that crime. On that evidence there was a felonious taking of money from his person and against his will; the "putting in fear" may reasonably be inferred from these circumstances. State v. Hall, Mo., 7 S.W.2d 1001. The jury was properly instructed that all persons are equally guilty who act together with a common intent in the commission of a crime. The evidence of the defendant and his witness Rigsby merely created a question of fact, to be resolved by the jury; such is also true of the testimony of the witness Goldberg, who said he saw Hennings talking to two Negroes while standing by his car, though Hennings denied conversations with any one but defendant. There is no doubt that there was substantial evidence of all the material elements of the offense charged. It is true that we find no express statement by any witness that the scene of the robbery was located in the City of St. Louis. We have held, however, that venue, like other elements of a crime, may be shown by circumstantial evidence. State v. Ruckman, Mo., 222 S.W.2d 74; State v. Cobb, 359 Mo. 373, 221 S.W.2d 745. Here it was shown that Hennings lived in the City of St. Louis, that the robbery occurred in the 4600 block on Easton Avenue, that he reported it at the Deer Street Station; the police officers concerned were all members of the St. Louis Metropolitan police force and one officer thereof testified that he received the complaint from Hennings at about 11:30 a. m. on October 17, 1954; when arrested, defendant and his companions were promptly taken to the Tenth District Station of the St. Louis City Police Department; in defendant's own testimony he related certain conversations in which he had participated from which there is a reasonable inference that he was, immediately prior to and immediately after the robbery, in the City of St. Louis. We hold that venue was sufficiently shown by the evidence; moreover, the jury was required to find, under Instruction 1, that the acts in question occurred "at the City of St. Louis and State of Missouri." The evidence was sufficient and the motions were properly overruled.

▆ The assignment in the motion for new trial that the court erred in giving Instructions No. 1 through 4 because "they contained improper statements of law" is wholly insufficient to bring the matter to our attention under Rule 27.20 and Section 547.030 RSMo 1949, V.A.M.S. State v. Murray, Mo., 280 S.W.2d 809; State v. Jonas, Mo., 260 S.W.2d 3; State v. Kelly, Mo., 107 S.W.2d 19; State v. Jordan, Mo., 235 S.W.2d 379.

The last assignment in the motion is that the court erred in not giving an instruction on "Larceny by Trick"; this term is of somewhat ambiguous meaning, and certainly no crime is so designated in the statutes. There are cases, however, which hold that where one, with a preconceived design, obtains possession of property by fraud with an intent to convert it, the owner not then intending to transfer title to him, such act may constitute larceny. State v. Scott, 301 Mo. 409, 256 S.W. 745; Farmers' Loan & Trust Co. v. Southern Surety Co., 285 Mo. 621, 226 S.W. 926; State v. Harrison, 347 Mo. 1230, 152 S.W.2d 161; State v. La France, Mo., 165 S.W.2d 624, 146 A.L.R. 529. These cases are not applicable here, however, for there is no evidence whatever that Hennings merely meant to part with possession of his money on any theory.

▆ Robbery, as such, includes the elements of larceny. State v. Lasky, Mo., 133 S.W.2d 334. But generally, in our law,

the offenses of larceny and of obtaining money or property by trick or false pretenses have been regarded as entirely separate crimes. State v. Anderson, 186 Mo. 25, 84 S.W. 946, 949; State v. Ewing, Mo. App., 270 S.W. 116. It seems that a conviction for one is generally not permissible under an indictment for the other. If one parts with title to his property through artifice and deception but by his own consent, the offense is obtaining property by false pretenses; in larceny there is generally a trespass and the property is taken from one without his consent. See the cases just cited, and also: State v. Lane, 355 Mo. 1182, 200 S.W.2d 72; State v. Copeman, 186 Mo. 108, 84 S.W. 942; State v. Perrin, 316 Mo. 585, 292 S.W. 54; State v. Patterson, 347 Mo. 802, 149 S.W.2d 332; State v. Harrison, 347 Mo. 1230, 152 S.W. 2d 161. We have statutory crimes arising out of false pretenses, trick or deception. See Sections 561.370 and 561.450, RSMo 1949, V.A.M.S. Certainly, the court did not need to give an instruction on one of these crimes under a robbery information; and defendant's evidence did not justify any larceny instruction. He testified that he merely won a small amount of money and a revolver while gambling. His sole and only theory was that he did not steal anything, and (legally) that he committed no trespass. Under the present information and this evidence defendant was guilty of robbery or nothing. There was no error in not further instructing the jury. We have not considered the provisions of Chapter 560 as re-enacted in the Laws of Missouri, 1955, for the reason that they were not in effect when the acts in question took place.

We find no error in the proceedings; we have examined the information, the verdict, and the judgment and sentence of the court. Defendant was accorded allocution in due form. The judgment will be affirmed. It is so ordered.

All concur.