DALE EVANS, EMPLOYEE, APPELLANT, v. FARMERS MUTUAL HAIL INSURANCE COMPANY OF MISSOURI AND FARMERS HAIL INSURANCE COMPANY, OF IOWA, EMPLOYERS, AND EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY AND EMPLOYERS MUTUAL CASUALTY INSURANCE COMPANY, INSURERS, RESPONDENT.—217 S. W. 2d 705.

Kansas City Court of Appeals. Opinion delivered February 7, 1949.

*Alexander, Ausmus & Harris* and *Warren D. Welliver* for appellant.

750

*John E. Linster* for respondents.

BOYER, C.—This is an appeal from a judgment of the circuit court of Boone County which set aside an award of the Industrial Commission of Missouri in favor of Dale Evans who had filed a claim for compensation before the Division of Workmen's Compensation, Department of Labor and Industrial Relations of Missouri. The claim lists both the Farmers Mutual Hail Insurance Company of Missouri, and Farmers Mutual Hail Insurance Company of Iowa, as employers, and also gives the name and address of their respective insurers. The date of the accident in which claimant was alleged to have sustained a broken leg was given as June 29, 1946, and the place of the accident as Avoca Hotel, Avoca, Iowa; and that the work employee was doing at the time was adjusting losses by hail upon growing crops. For brevity, appellant will hereafter be referred to as the employee, and the Farmers Mutual Hail Insurance Company of Missouri as the Missouri Company, and the Farmers Mutual Hail Insurance Company of Iowa as the Iowa Company.

The Missouri Company and its insurer for answer to the claim deny that the Division of Workmen's Compensation has jurisdiction of the claim, and allege that Dale Evans was an employee of the Iowa Company on the date of his alleged injury and was not an employee

of the Missouri Company at said time, and they deny that the employee sustained an accident arising out of and in the course of his employment.

The answer of the Iowa Company and its insurer states that they appear specially, and in general states that the Division of Workmen's Compensation of the Industrial Commission of Missouri does not have jurisdiction of the parties or the cause of action set forth in the claim insofar as the allegations of the claim concern the Iowa Company and its insurer. Further answering, the Iowa Company and its insurer deny each and every allegation contained in the claim for compensation.

The claim was heard by a referee on June 16, 1947. It was admitted by both the Missouri and Iowa Companies that the claim was filed within the time prescribed by law; that no compensation had been paid and no medical aid furnished. It was granted by all parties that the Missouri Company and the Iowa Company are corporations and separate entities. It was admitted that the Missouri Company was a major employer operating under the provisions of the Missouri Workmen's Compensation Law, and that its liability was covered by its insurer. There was no such admission on the part of the Iowa Company.

The evidence at the hearing consisted of the testimony of Paul R. Rutledge, who was secretary of the Missouri Company; the testimony of Dale Evans, the employee, and certain exhibits. The following facts appear from the evidence. The Missouri Company is engaged in the business of insuring crops against loss by hail in the State of Missouri, and the Iowa Company is engaged in the same business in the State of Iowa. Long prior to June 1946, it had been the custom for companies engaged in the same business in other states, including the Iowa Company, to call upon the Missouri Company to send adjusters employed by the Missouri Company to their states to adjust losses for them when their work was unusually heavy, and the Missouri Company had men available. The practice in such case was for the Missouri Company to pay employees their regular wage, traveling and car expense, and the Missouri Company would bill the other company for the salary and expense and for an amount in excess of the actual cost to the Missouri Company, which resulted in a monetary profit to the Missouri Company. On June 29, 1946, and since 1936, employee had been in the general employment of the Missouri Company. On February 1, 1946, employee and the Missouri Company entered into a written contract of employment wherein he was appointed by the Missouri Company for one year as agent with authority to take applications, collect policy fees, accept money and receipt therefor, and to perform other tasks directed by the officers of the Missouri Company. The salary of employee was to be $210 a month, plus commission and necessary hotel and traveling ex-

pense. The use of an automobile and the upkeep thereof was also furnished by the Missouri Company.

C. P. Rutledge, a brother of Paul Rutledge, was president of the Iowa Company. Some time in June 1946, he called the secretary of the Missouri Company and requested him to send adjusters to Iowa to help adjust losses. Paul Rutledge called the employee and told him to finish his work in Missouri, and directed him to go to Iowa to help the Iowa Company adjust losses. Upon finishing his work in northern Missouri, the employee went to Iowa on June 27, 1946, and arrived at the town of Avoca that afternoon. He made contact with an adjuster for the Iowa Company and worked the rest of the day with him. He stayed at the Avoca Hotel that night. The next morning some of the men working for the Iowa Company gave him a list of losses to be adjusted and he worked on these claims all that day alone. That night he again stayed at the same hotel in Avoca, and the next morning he and other adjusters decided to leave the Avoca Hotel and go to Atlantic, Iowa, in order to procure better accommodations. Employee went back to the hotel to get his grip and to check out, intending to adjust losses that day between Avoca and Atlantic, and to stay at Atlantic that night. As he was leaving the hotel, carrying his grip and a small electric fan in a paper sack, his foot caught on a mat on the stairway and he either fell or sat down and broke his leg. In describing what happened, the employee stated that he did not fall, but turned around, sat down on the landing, and broke his leg. Later in his testimony he stated that his grip caught on the bannister post and his foot fastened under the step at the time he fell. He was taken to a hospital in Atlantic, and later to a hospital in St. Joseph, Missouri, where he received additional treatment. He was in the hospital eighteen days, and was away from work as a result of the accident until January 16, 1947, and he did not return to full time work until March 1, 1947.

In adjusting losses in Iowa, employee used the Iowa Company's proof of loss forms, but did not issue checks or drafts in payment of losses. All the losses worked on in Iowa were for people insured in the Iowa Company. No one directed him how to adjust losses or what to pay; all the directions he received were the slips furnished by someone connected with the Iowa Company which gave the location of the claims. He was permitted to select his own hotels and did not discuss with any one what the work was going to be the next day. The secretary of the Missouri Company had full supervision and control over employee and directed him where to go and what to do, and after he had gone to Iowa he could be recalled at any time. This was the testimony of Paul Rutledge, secretary of the Missouri Company. He also testified that he considered the matter of sending men to Iowa or elsewhere "was just a business transaction between the companies, whichever company it may be, and the Missouri Company."

The contract of employment between the Missouri Company and employee provided, among other things, that entering into a contract with another company writing hail insurance would be cause for cancellation of the contract and the forfeiture of salaries and remunerations furnished thereunder.

It was shown that the necessary medical and hospital expense provided by employee for himself amounted to $574.95. It was agreed that a specified physician should rate the permanent disability, and that all parties would be bound by the report. The doctor reported that he found ten to twenty per cent disability of the leg at the knee if the swelling persisted, and that the swelling has persisted.

The referee made his findings of fact and conclusions of law in which he found twenty per cent permanent partial disability to the right leg at the knee, for which he allowed weekly compensation of $20 for 32 weeks, amounting to $640, which with the medical expense amounted to a total allowance of $1214.95. In his additional findings of fact and rulings of law he stated that he found from the evidence that the employee sustained an accidental injury on June 29, 1946, which arose out of and in the course of his employment with the Farmers Mutual Hail Insurance Company of Missouri; that the employer and insurer knew or should have known that the employee was in need of medical, surgical, and hospital treatment, but had failed to furnish such treatment. The referee further found that from all the evidence the employee was not an employee of the alleged employer, The Farmers Mutual Insurance Company of Iowa at the time of the accident. This report and finding of the referee was made November 7, 1947. The Missouri Company and its insurer filed their application for a review by the full commission of the award made by the referee as aforesaid. The employee did not appeal from the decision of the referee.

The final award of the full commission made December 31, 1947, including findings of fact and rulings of law, was a duplication of that made by the referee, and affirmed on review the award of the referee.

The Missouri Company and its insurer filed notice of appeal to the circuit court of Boone County. The employee did not appeal. Upon consideration of the appeal in the circuit court the cause was taken under advisement and on May 20, 1948, the court entered its finding and judgment in which it is recited that "the court * * * finds the issues herein for the Farmers Mutual Hail Insurance Company of Missouri, the employer, and Employers Mutual Liability Insurance Company, the insurer, and against Dale Evans, the employee; that the facts found by the Industrial Commission of Missouri do not support the award, and that there is not sufficient evidence in the record to warrant the making of the award. It is therefore ordered and adjudged by the court that the award of the In-

dustrial Commission of Missouri be, and the same is hereby set aside, and this cause remanded to said commission for further proceedings therein, as required by law. The employee filed timely notice of appeal and the case is duly here for review upon the transcript and the briefs of the respective parties.

Appellant asserts error in the finding and judgment of the circuit court as above set forth and claims that said judgment is contrary to the law applicable to the evidence. In addition to the foregoing, a substantial issue injected into this appeal by respondent, the Missouri Company, is the question of who was the employer of claimant at the time of his injury. It is contended by the Missouri Company that he was a loaned employee under the loaned servant rule and, therefore, he was in the employ of the Iowa Company at the time he was injured. This contention will be considered in connection with the finding and judgment of the circuit court.

Our first observation is in reference to the finding of the circuit judge that the facts found by the commission do not support the award. We do not know whether the court considered the finding of the commission too general or for what reason he condemned it as being insufficient to support the award, but in cases of this character the law has been declared to be that a general finding of the commission implies the finding of every fact necessary to support the general finding. State ex rel. Buttiger v. Haid, 330 Mo. 1030, 1034, 51 S. W. (2d) 1008. The commission was not required to make its findings any more definite. If either party desired particular or specific findings, such findings should have been requested of the commission, and in default of such request complaint on appeal will not be heard. Jones v. Remington Arms Co., 209 S. W. (2d) 156; Smith v. General Motors Corp., 189 S. W. (2d) 259. It is not a failure to find facts that defeats an award, but a finding of facts inconsistent with the award. State ex rel. Buttiger v. Haid, supra, l. c. 1036. It appears to us that every fact found by the commission supports the award, and that there was no finding of any fact inconsistent with the award.

Was there sufficient evidence in the record to warrant the making of the award? The finding of the circuit court was that the evidence was insufficient, without stating any reason why the court so found. No specific finding was made as to which company was the employer at the time of the accident. We can only infer from the general finding in favor of the Missouri Company that the court was of opinion that claimant was not in the employ of the Missouri Company at the time of the accident. Except by inference, there was no finding or ruling of the court in reference to the loaned servant issue.

The pattern for judicial review of decisions of administrative bodies has been definitely and specifically prescribed by the Supreme Court in Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S. W. (2d)

647, and in Seabaugh v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S. W. (2d) 55. The pattern is this: That while a review shall include an inquiry whether the decision of the commission is supported by competent and substantial evidence upon the whole record, yet "this does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence." Subsequent adjudications of our appellate courts consistently recognize and conform to the pattern. Coleman v. Brown Strauss Corporation, 210 S. W. (2d) 537; Walker v. Pickwick Hotel, 211 S. W. (2d) 55; Crawford v. A. J. Sheahan Granite Co., 211 S. W. (2d) 52; Jones v. Remington Arms, Co., *supra.*

Guided by the law as declared in the foregoing cases, we are of opinion and rule that the finding of the commission, including its finding that claimant was not in the employ of the Iowa Company, is supported by competent and substantial evidence, and that the commission could have reasonably made the award which it did make. We are also of opinion that the loaned servant rule does not apply and preclude the award that was made to the employee in this case. In determining the status of one as a loaned servant, in order to enable the original employer to escape liability, there are many conditions and factors that must be taken into consideration. A principal one appears to be that the original master must resign full control of the servant for the time being, it not be'ng sufficient that the servant is partially under the control of a third person. In the case of O'Brien v. Rindskopf, 334 Mo. 1233, 70 S. W. (2d) 1085, beginning on page 1242 of the opinion in the State Report, are relevant and pertinent declarations of law as follows: "While it is true that one may be in the general service of another, and, nevertheless, with respect to a particular work, may be the servant of another, who may become liable for his acts, yet to escape liability the original master must surrender full control of the servant in the performance of said work. The fact that the servant is partially under the control of the third person will not release the original master for any wrongful act done by the servant in the ordinary course of his employment." The opinion cites as pertinent authority 39 C. J. p. 1274, sec. 1462, and the leading case of Standard Oil Company v. Anderson, 212 U.S. 215, 53 L. Ed. 480.

Another principal factor for consideration in a loaned servant case is that there must be consent on the part of the employee and, in effect, that he must agree to a change of employers. This rule is announced in both the Missouri cases cited and relied upon by the Missouri Company. Lee v. Oreon E. and R. G. Scott Realty Co., 96 S. W. (2d)

652. Ellegood v. Brashear Freight Lines, Inc., 236 Mo. App. 971, 162 S. W. (2d) 628. There is no evidence in this case that the employee ever gave his consent to a change of employers. The Iowa Company employed the Missouri Company but did not employ its employee. The relationship of master and servant is based on contract and there could be no reasonable inference from the evidence that the employee ever contemplated or intended to enter into a contractual relationship with the Iowa Company. He was under written contract of employment with the Missouri Company, in pursuance of which he was entitled to substantial remuneration and had been drawing an annual bonus of about $1000, in addition to his stipulated salary. His contract provided that in event he contracted with any other company it would subject him to a forfeiture of all remuneration under his contract with the Missouri Company. According to the testimony of both the employee and the secretary of the Missouri Company, the employee remained under the direction and control of said secretary and was subject to recall at any time, and if recalled he would immediately return to Missouri. There was no surrender of control by the Missouri Company of the emplyee. Respondent, the Missouri Company, relies especially upon the Ellegood case, in which it was ruled that Ellegood was an employee of Brashear, and contends for a similarity of facts between that case and the pending one. Upon examination we find that a difference of facts is more pronounced than a similarity. The service of Ellegood, together with the use of a truck, had been hired by Brashear from the owner of the truck to engage in the business of transporting freight. He was engaged with the truck in question and was under complete control and direction of Brashear as to everything he did and where he should go. His service continued for a protracted period covering many months, whereas in the pending case the service of the employee with the Iowa Company was merely casual, and he still remained subject to the direction and control of his original employer, the Missouri Company. Ellegood was injured and sued Brashear for damages. The answer pleaded a defense that plaintiff was subject to the provisions of the Missouri Workmen's Compensation Act, and that whatever rights he had were under said Act. The employee had also filed a claim with the Workmen's Compensation Commission in which he sought compensation as an employee of Brashear Freight Lines. This claim was received in evidence in that case and was held to be an admission of the existence of facts necessary to make appellant an employer subject to the Workmen's Compensation law and was binding on plaintiff unless contradicted or explained. On account of factual differences in the two cases our decision here that the employee was not a loaned servant is not in conflict with the Ellegood case.

The ruling in the Lee case, *supra*, is more nearly applicable to the situation in the pending case, and we agree to what was there said

in the course of the opinion, l. c. 654: "The fact that plaintiff remained under the direction and control of the realty company precludes the application of the rule relating to a lent employee. It is out of accord with the spirit and purpose of the compensation law that an employee when injured be put to the task of guessing who his employer is to whom he must look for compensation, and be bandied about from one to another, so that in the end all may escape."

The Missouri Company makes the further contention that the accident did not arise out of and in the course of appellant's employment, and cites Smith v. Seaman & Schuske Metal Works Company, 344 Mo. 529, 127 S. W. (2d) 435, and Ricketts v. Story Laundry & Dry Cleaning Co., 155 S. W. (2d) 536. In both of these cases the employee had departed from his course of employment and was on a mission of his own at the time of injury. The cases are not in point. We entertain no doubt whatever that the evidence was sufficient to support the commission's finding that the employee's accident arose out of and in the course of his employment. Buckner v. Quick Seal, Inc. and Liberty Mutual Ins. Co., 233 Mo. App. 273, 118 S. W. (2d) 100; Everard v. Woman's Home Companion Reading Club, 234 Mo. App. 760, 122 S. W. (2d) 51; Beem v. H. D. Lee Merchantile Co., 337 Mo. 114, 85 S. W. (2d) 441; Watson v. Marshall's U. S. Auto Supply, Inc., 238 Mo. App. 1219, 186 S. W. (2d) 556.

There is complaint of erroneous admission of evidence before the referee. During the hearing, employee offered in evidence a letter written by Mr. Rutledge, secretary of the Missouri Company, to the Director of the Division of Workmen's Compensation in reference to the claim of Mr. Evans. Among other things the writer stated: "So far as we can determine, the statements of Mr. Evans in his claim for compensation are admitted for, as you know, it has been our opinion, personally, that Mr. Evans was at all times an employee of this Company." Over objection on the ground that it was hearsay, the referee stated: "It will be admitted for what it's worth."

The letter was inadmissible under the ruling in Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S. W. (2d) 947. However, under the facts and circumstances shown in this case, we think the error was harmless because the testimony of the Missouri secretary is in effect the same as the facts stated in his letter. Furthermore, the brief of respondent contains this statement: "Respondent does not believe that the letter really contains any admissions damaging to respondent's theory of the case." There was ample evidence independent of the letter to support the finding and conclusion of the commission, and under the statement of respondent quoted above the complaint against the erroneous admission of evidence is without substantial merit.

The Iowa Company, in its brief, supports the contention of appellant in behalf of the finding and award of the commission. In view

758

of the conclusion which we reach in this case, approving the finding of the commission that the employee was not in the employ of the Iowa Company, it is not necessary to consider the motion of that company to dismiss the appeal as to it.

For the reasons above set out the judgment should be reversed and the cause remanded to the trial court with direction to affirm the award of the commission. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with direction to the trial court to affirm the award of the commission. All concur.