James Dean LANG, Plaintiff-Appellant,

v.

Darrell LEE, et al.,
Defendants-Respondents.

No. WD 33006.

Missouri Court of Appeals,
Western District.

July 6, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Aug. 31, 1982.

Application to Transfer Denied
Oct. 18, 1982.

John H. Lake, Goller, Hedrick & Lake, Jefferson City, for plaintiff-appellant.

Larry M. Woods, Sapp, Woods, Orr & Bley, Columbia, for defendants-respondents.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

James Dean Lang was a permanent teacher in the South Callaway R–II School District. Pursuant to notice and hearing, the Board held a hearing to determine whether or not Lang's permanent status should be terminated. At the conclusion of the hearing, the Board made findings of fact and conclusions, and terminated Lang.

Lang appealed to the circuit court which affirmed the action of the Board.

On this appeal Lang contends the action of the Board should be reversed because the Board failed to grant (1) a continuance because a criminal case was pending against him at that time; (2) the Board received hearsay evidence; and (3) the Board's attorney improperly influenced rulings by the Board. Affirmed.

Lang was given notice that he was charged with immoral conduct under § 168.114.1(2), RSMo 1978, and that a hearing would be held on whether or not to terminate his status as a permanent teacher for that reason. The charges specified that in March and April, 1980, Lang took indecent and immoral liberties with a 13-year old male by showing him pornographic magazines and movies and by placing his hands on the boy's genital area. The charges also specified that Lang had taken indecent and immoral liberties with at least four other boys under the age of 18.

The hearing was held on August 15, 1980. At the beginning of the hearing, Lang's counsel requested a continuance of one week because the conduct involved in the charges pending before the Board was also the subject of a criminal charge pending against Lang. The attorney stated there was a "very good chance" that the criminal case would be resolved the following Monday, which would be well before the expiration of one week. The attorney further stated that if the charges were not resolved before the expiration of the week, he was sure the Board would have Lang's resignation by the end of that time. The attorney told the Board that Lang could not testify before the Board without such testimony being available for use in the criminal case and he wanted Lang to be able to testify before the Board. The Board denied the request and thereupon Lang's attorney stated that in anticipation of that ruling, he was authorized to deliver and to read a letter of resignation from Lang. The letter denied the charges and stated that Lang was not ruling out further lawsuits against everyone involved in the proceedings. The

letter did not state that it was a resignation, although the attorney told the Board that he was authorized by Lang to say that it was a resignation. The Board refused to accept the resignation and directed the hearing to proceed.

The Board heard the testimony of two police officers and received a copy of an investigative report from the Jefferson City Police Department. The Board also received a copy of a written statement made by Lang to the police, and received in evidence several magazines, a movie projector and reels of film. Lang did not appear at the hearing.

The evidence presented to the Board indicated that on two occasions a 13-year old boy had gone to Lang's home in Jefferson City for the purpose of performing odd jobs, and, in the process, Lang had shown him pornographic magazines and movies and had placed his hands on the boy's genitals.

No issue is made as to the voluntary nature of the statement Lang gave to the police officers, and the evidence was that the statement was given only after Lang had been given his *Miranda* warnings. In the statement Lang admitted having the magazines in his home which he allowed the boy to examine, and also admitted showing him the pornographic movies. He stated he told him he would show him the movies until the boy became excited. He admitted placing his hands on the boy's crotch. In the statement, Lang admitted having had sexual contact between 1971 and 1980 with four other boys who were between the ages of 14 and 18. He stated this relationship lasted for 14 months with two of the boys, five months with another, and three months with the fourth. He stated all of these contacts took place at his home.

Lang first contends the Board abused its discretion in denying his request for a one-week continuance because the denial infringed his right of due process since it required him to forego his right to testify before the Board because such testimony could have been used in the trial of the criminal charges pending against him.

Lang does not rely upon any Fifth Amendment ground. The loss of opportunity to testify in a civil proceeding because of a fear that such testimony may be used in a criminal proceeding was held not to be a denial of Fifth Amendment rights in *Cox v. McNeal,* 577 S.W.2d 881, 887–8[4] (Mo.App. 1979). The court there stated that the loss of an opportunity to testify in a person's own defense in a civil hearing is not protected by the Fifth Amendment when such hearing does not involve a requirement to answer questions or lose employment as was involved in *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) and similar cases.

It is well to note that the present case does not bear any factual resemblance to *Garrity* and cases of that nature because Lang's permanent teacher status could not be terminated on the ground that he did not testify at his termination hearing. Rather, in this case, the Board was required to have competent and substantial evidence presented to prove the charges against him upon which to base a termination of Lang's teacher status. *Aubuchon v. Gasconade Cty. R–I Sch. Dist.,* 541 S.W.2d 322, 326[4–8] (Mo.App.1976).

The precise issue presented here of whether or not Lang's due process rights were infringed by the Board insisting that the hearing proceed before the criminal charges had been resolved was dealt with in *Gabrilowitz v. Newman,* 582 F.2d 100 (1st Cir. 1978) and *Arthurs v. Stern,* 560 F.2d 477 (1st Cir. 1977) cert. den. 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). In *Gabrilowitz* a college student faced a disciplinary hearing at a state university while criminal charges were pending against him arising out of the same incident. The court distinguished *Garrity* by stating that the silence of the student was not considered as an admission of guilt and evidence was required to be adduced to prove the case against the student. The court held the student was required to make a choice of whether or not to testify at the disciplinary hearing with the realization that if he did, his testimony might be used against him in

a criminal case. The court observed that even though this was a difficult choice, difficult choices are not unknown in the legal system. Although the court held the student was entitled to counsel to assist him in making the choice of whether or not to testify in the disciplinary proceeding, the court held that the requirement that the choice be made did not deny the student due process.

In *Arthurs* a physician faced a civil hearing to determine whether or not his license to practice should be suspended or revoked for writing illegal prescriptions while criminal charges arising out of the same transaction were pending. The court held there was nothing inherently repugnant to due process in requiring the physician to make the choice between giving testimony at the hearing on the license issue with the knowledge such testimony might be used in the criminal case or to remain silent. The court found support for its decision in *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) in which the Supreme Court held that the Federal Drug Administration was not required to withhold civil proceedings pending the outcome of criminal charges. The court observed in *Kordel* that it would stultify enforcement of the federal drug law to require the agency to withhold its civil proceedings until criminal proceedings had terminated. The court also observed the public interest involved in the protection of consumers from misbranded drugs and stated the withholding of civil proceedings until termination of a criminal case would adversely impact upon the protection of consumers.[1]

In this case the School Board was dealing with a teacher who obviously had contact daily with young people. The strong interest which the Board had in determining whether or not a teacher was guilty of immoral conduct naturally motivated the Board to try to dispose of Lang's case as expeditiously as possible. In view of the charges leveled against Lang, and in view of the overriding public interest in disposing of such charges, *Kordel, Gabrilowitz* and *Arthurs* compel the conclusion that Lang did not suffer any deprivation of due process. It could be further observed that the Board had only a request for a one-week continuance with no factual basis given on which it could reasonably conclude that the criminal charges would be terminated within a week. For these reasons the Board did not abuse its discretion in refusing a one-week continuance.

■ Lang next contends that the Board erroneously admitted an investigative report prepared by the Jefferson City Police Department which contained a statement given by the 13-year old boy. Lang contends this statement was hearsay on hearsay since neither the boy nor the officer who took the statement testified before the Board. Assuming without deciding that the report should not have been received in evidence, nevertheless it was harmless error. As previously noted, the Board had before it a statement given by Lang to which there was no objection made and which had been shown to have been voluntarily given after Lang was advised of his *Miranda* rights. In this statement Lang admitted the conduct related in the boy's statement contained in the challenged report. In *Evans v. Farmers Mutual Hail Ins. Co.*, 240 Mo.App. 748, 217 S.W.2d 705, 711[9] (1949), this court considered a claim of the erroneous admission of a letter before an administrative body. The court stated there was ample evidence independent of the letter to support the finding and conclusion of the administrative body. The court held in that circumstance the admission of the letter was at most harmless error. Here the statement of Lang constituted substantial evidence independent of the boy's statement contained in the report to support the Board's action in terminating Lang's contract. The admission of the report therefore constituted at most harmless error.

---

1.  Lang relies upon *Silver v. McCamey*, 221 F.2d 873 (D.C.Cir.1955) in which it was held that an administrative hearing to revoke a taxicab driver's license should await determination of criminal charges arising out of the same incident. The court held the license could be suspended in the interim. The court in *Arthurs* said the holding in *Silver* was overcome by *Kordel*.

Lang finally contends the Board's attorney improperly participated in and influenced the Board's ruling on the request for a continuance and the admission of the investigative report. The transcript of the hearing before the Board fails to sustain Lang's position. When the two questions were presented to the Board, the record indicates the Board's attorney and the attorney for Lang each expressed their view. Thereafter, the president of the Board announced his ruling. There is nothing in the record to indicate the Board's attorney did any more than express his view, as did the attorney for Lang. This court cannot assume that the Board was improperly influenced by its attorney. *Eddington v. St. Francois Cty. R–III Bd. of Ed.*, 564 S.W.2d 283, 286[6] (Mo.App.1978).

The judgment is affirmed.

All concur.